UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION




FILED

JUN 29 2017

CLERK

| | |
|---|---|
| DAYS INNS WORLDWIDE, INC., A DELAWARE CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>GREG MILLER, AN INDIVIDUAL,<br><br>Defendant. | 3:16-CV-03004-RAL<br><br><br>OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

Plaintiff Days Inns Worldwide, Inc. (Days Inns) sued Defendant Greg Miller (Miller) invoking diversity jurisdiction under 28 U.S.C. § 1332. Doc. 1 at 1. Days Inns had entered into a License Agreement in April of 1997 with Miller under which Miller operated a Days Inn branded motel in Murdo, South Dakota. Doc. 1 at 2. Days Inns terminated the License Agreement in April of 2012 after Miller had fallen behind on financial obligations to Days Inns. Doc. 1 at 4. Days Inns, in 2016, brought four causes of action against Miller: 1) an accounting under Sections 3.8 and 4.8 of the License Agreement; 2) breach of contract for the premature termination of the License Agreement; 3) breach of contract for Miller's non-payment of certain recurring fees owed under the License Agreement; and 4) an unjust enrichment claim for Miller's non-payment of recurring fees. Doc. 1 at 5–7. Miller answered, asserted several affirmative defenses, and filed a counterclaim with the following four counts: 1) negligent misrepresentation based on statements that allegedly induced Miller into the License Agreement and caused him to take actions during the License Agreement; 2) tortious interference with

1

business relationships based on Days Inns' suspension of access to its reservation system for Miller's hotel; 3) a deceit and fraudulent misrepresentation claim based on the same allegations as in Count 1; and 4) a breach of contract claim based on the same allegations as in Count 2. Doc. 9.

Days Inns has filed a motion for summary judgment on its complaint and on Miller's counterclaim. Doc. 21. Miller did not respond timely to the motion for summary judgment and accompanying papers, but this Court hesitated to grant summary judgment under the circumstances and through an order gave Miller an additional fourteen days to respond. Doc. 28. Miller then responded resisting the motion for summary judgment. Docs. 29, 30, 31, 32. For the reasons explained below, this Court grants Days Inns' motion for summary judgment on its "third count" in part and on Defendant's counterclaim in whole. This Court's grant of partial summary judgment on the "third count" for breach of contract renders the "fourth count" seeking unjust enrichment moot. Because it is unclear whether Days Inns is still seeking an accounting under its "first count" and because of issues surrounding the enforceability of and calculation under the future damages provision of the addendum at issue in the "second count," summary judgment is denied on those claims.

## I.    Material Facts not Subject to Genuine Dispute

Days Inns is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in New Jersey. Doc. 22 at ¶ 1; Doc. 27; Doc. 29 at ¶ 1. Days Inns is one of the largest guest lodging facility franchise systems in the United States. Doc. 22 at ¶ 1; Doc. 27; Doc. 29 at ¶ 2. Days Inns does not own or operate any hotels, but has a franchise system where it licenses its federally-registered trade names, service marks, logos, and derivations thereof. Doc. 22 at ¶ 3; Doc. 27; Doc. 29 at ¶ 3. Miller is a South Dakota citizen

living in Murdo, South Dakota. Doc. 22 at ¶ 4; Doc. 29 at ¶ 4. More than $75,000, inclusive of interest and costs, is genuinely at issue in this lawsuit, such that federal court diversity jurisdiction exists here under 28 U.S.C. § 1332.

Miller has a background in the hotel/motel industry and had run an independent 29-unit motel in Murdo from approximately 1988 until 1998. Doc. 26-2 at 4–6.[1] Miller's 29-unit independent hotel in Murdo, however, was not "panning out," according to Miller's testimony. Doc. 26-2 at 6. Miller met with a representative[2] of Days Inns[3] to explore opening a new hotel in Murdo to be branded "Days Inn." Doc. 26-2 at 6. According to Miller, Days Inns' representative assured Miller that the Days Inns reservation system would supply more than enough customers to operate the hotel successfully. Doc. 9; Doc. 30; Doc. 31.

Miller and Days Inns entered in a License Agreement dated April 11, 1997, and an Addendum to License Agreement for the State of South Dakota, likewise dated April 11, 1997. Doc. 27-1; Doc. 27-5. Miller signed both the License Agreement and Addendum as the contracting party and guarantor, and had his attorney review the documents prior to his signing. Doc. 26-2 at 8; see Doc. 27-1; Doc. 27-5. Several of the provisions of the License Agreement are central to this case and the motion for summary judgment. In brief, the License Agreement authorized Miller to brand his motel as a Days Inn motel, but imposed a series of conditions and

---

[1] Document 26-2 in the CM/ECF system is the transcript of the deposition of Defendant Greg Miller in this case. The page number references in this Opinion and Order are to the page within Document 26-2 and not to the particular page of the deposition transcript. Some of the information drawn from Miller's deposition in this Opinion and Order were not set forth in the separate statement of Undisputed Material Facts and Response to Statement of Undisputed Material Facts, but this Court is cautious when ruling on this summary judgment motion to rely only on facts not subject to genuine dispute and facts in the light most favorable to Miller.

[2] Miller's discovery responses refer to this representative as Marc Holberg, Doc. 26-1, but the deposition transcript refers to the same person as Mark Holmberg, Doc. 26-2.

[3] Holberg may have been employed with the predecessor to Days Inns, but nevertheless was a representative for the entity that now is knows as Days Inns.

responsibilities. Section 3.9 of the License Agreement obliges Miller to create and maintain reports and accountings, including submitting timely monthly reports, submitting other reports as reasonably requested, maintaining books and accounts, allowing access to books and accounts, and furnishing annual and semi-annual statements to Days Inns. Doc. 27-1 at 4–5. Section 4.8 of the License Agreement gives Days Inns the right to conduct inspections and audits. Doc. 27-1 at 7–8.

Under Section 5 of the License Agreement, "[t]he Term begins on the Effective Date and expires on the day prior to the twentieth anniversary of the Opening Date." Doc. 27-1 at 9. Miller's Days Inn branded hotel opened apparently in June of 1999, although the record is unclear as to what the precise opening date was. Doc. 26-2 at 5. Thus, the contemplated term of the agreement would be through sometime in June of 2019. To become an authorized franchise of Days Inns, Miller owed initial fees under Section 6 of the License Agreement of a total of $41,000. See Doc. 27-1 at 9. The License Agreement contemplated a 50-room hotel, but Miller "felt we needed to reduce what we were doing, as our original estimate was 50 and reduced it to 41." Doc. 26-2 at 10; Doc. 27-1 at 31. Days Inns agreed to the reduction in the size of the hotel, Doc. 26-2 at 10, and a letter sent September 22, 1999, from Days Inns to Miller acknowledged that Days Inns had just recently learned that the capacity was 41 guest rooms and accepted that arrangement, Doc. 27-2.

Under Section 7 of the License Agreement, Miller had responsibilities to pay to Days Inns certain recurring fees, taxes, and interest. Doc. 27-1 at 10–11. Miller owed a "Royalty" of 6.5 percent of gross room revenues, plus a "Reservation System User Fee" as set forth in Schedule C to the License Agreement. Doc. 27-1 at 10–11, 32. Together, those combined fees appeared to be at least 8.8 percent of gross room revenues. The License Agreement also

4

imposed interest under Section 7.3, "on any past due amount payable to [Days Inns] under this Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the date due until the amount is paid." Doc. 27-1 at 11. Section 11 of the License Agreement in turn contained provisions for default and termination. Under Section 11.1, default was defined, among other things, as Miller failing to pay recurring fees when they were past due, and Days Inns had the option to terminate if Miller did not cure such a default within 30 days of written notice. Doc. 27-1 at 14. Under Section 11.4, Days Inns had other remedies upon default:

> We may suspend the Facility from the Reservation System for any default or failure to pay or perform under this Agreement, discontinue Reservation System referrals to the Facility for the duration of such suspension, and may divert previously made reservations to other Chain Facilities after giving notice of non-performance, non-payment or default . . . Reservation service will be restored after you have fully cured any and all defaults and failures to pay and perform.

Doc. 27-1 at 15. Days Inns also could remove Miller from the Reservation System altogether upon termination. Doc. 27-1 at 16.

Section 12 of the License Agreement contained a liquidated damages provision for future damages payable to Days Inns upon a termination caused by a franchisee's actions. Doc. 27-1 at 15–16. However, the Addendum to License Agreement for State of South Dakota deleted Section 12 and replaced the section with the following provision:

> Notwithstanding any such termination, and in addition to your other obligations, or in the event of termination or cancellation of the License Agreement under any of the other provisions therein, you shall be, continue and remain liable to us for any and all damages which we have sustained or may sustain by reason of such default or defaults and the breach of the License Agreement on your part until the end of the Term.
>
> At the time of such termination of the License Agreement, you covenant to pay to us within 10 days after demand compensation for all damages, losses, costs and expenses (including reasonable attorney's fees) incurred by us, and/or amounts

which would otherwise be payable for and during the remainder of the unexpired Term of the License Agreement, but for such termination.

Doc. 27-5 at 2.

The License Agreement specified that New Jersey law governed. Doc. 27-1 at 20. The License Agreement had a final integration clause stating: "This Agreement, together with the exhibits and schedules attached, is the entire agreement (superseding all prior representations, agreements and understandings, oral or written) of the parties about the Facility." Doc. 27-1 at 20. Further, Section 17.4 of the License Agreement provided: "The non-prevailing party will pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement." Doc. 27-1 at 20.

Miller began operating a Days Inn branded hotel in or around June of 1999 in Murdo. Doc. 26-2 at 5. In 2005, Miller met with Days Inns representatives in Chicago because the hotel was not working out financially. Doc. 26-2 at 10–11. Although Miller had hoped for greater financial concessions from Days Inns, Miller entered into an Amendment to License Agreement dated December 13, 2005, which lowered the combined fees that he owed under the License Agreement to Days Inns during Miller's off season—between November 1 and April 30— effective November 1, 2005 through October 31, 2008. Doc 26-2 at 11; Doc. 27-3. On January 14, 2008, Miller obtained an additional concession from Days Inns in the form of another Amendment to License Agreement that lowered the fee on gross room revenues for the entire period of May 1, 2006 through April 30, 2008. Doc. 27-4.

Miller admittedly fell behind in making payment of the fees required by the License Agreement, despite the two amendments reducing the fee on gross room revenues. Doc. 26-2 at 9. A portion of the reservations to Miller's Days Inn hotel in Murdo came through the Days Inns Reservation System, although the counterclaim alleges that no more than 17 percent of the

business came in that manner at any time. Doc. 9 at 5. Days Inns elected to take Miller off of the Reservation System, which Miller acknowledged "was 100 percent because of my inability to pay." Doc. 26-2 at 12. Miller contends that, by doing so, Days Inns interfered with business relationships and breached the contract. See Doc. 9 at 6–8, 10–11. However, Section 11.4 makes clear that Days Inns had the contractual option to suspend Miller from access to the Reservation System upon notice when he was in default or failing to pay what was owed under the License Agreement. Doc. 27-1 at 15. Miller believes that he was first restricted from the system in 2009 and 2010. Doc. 26-2 at 16. Days Inns wanted Miller to purchase a software update and make payments to regain access to the Reservation System. Doc. 26-2 at 12. Miller borrowed money and paid approximately $14,000 for the software update, but was never able to catch up fully on his payments to Days Inns. Doc. 26-2 at 12, 14, 16. Miller was back on the Days Inns Reservation System for a period of four or five months, but then was terminated from the system as he continued to be behind on making payments. Doc. 26-2 at 14, 16. Miller also claims that Days Inns told him that he needed to become a "5 Sunburst" property or a "Chairman's Award" property to achieve higher occupancy rates through the Reservation System and that, despite Miller's success in becoming a motel very highly rated by customers who stayed there, his occupancy rates did not rise. Doc. 9 at 4–5.

On January 12, 2012, Days Inns sent to Miller a Notice of Monetary Default letter advising Miller that he was past due in the amount of $182,465.32[4] in fees to Days Inns and giving him ten days within which to cure the default. Doc. 27-6 at 2. Miller received the letter,

---

[4] The letter actually refers to the balance of $182,465.32 as the amount "as of January 10, 2011." Doc. 27-6. However, the attachment to the letter indicates that reference to 2011 likely is a typographical error and that the amount of $182,465.32 is what was due as of January 10, 2012. See Doc. 27-6.

but appeared not to respond. Doc. 22 at ¶ 30; Doc. 29 at ¶ 30; <u>see</u> Doc. 26-2 at 15. Miller did not pay the amount claimed in the Notice of Monetary Default letter.

On April 17, 2012, Days Inns sent a Notice of Termination to Miller, which estimated as of the date of the letter that Miller owed $198,161.18 in fees to Days Inns. Doc. 27-7. The letter also referenced $2,625 for termination of the Addendum to the agreement for Satellite Connectivity Services and $8,748.50 for the outstanding balance of a sign lease, but neither of those amounts appear to be sought by Days Inns in this lawsuit. Doc. 27-7 at 2. The letter also sought damages of $414,572.40, which is an amount that Days Inns now claims under the Addendum to License Agreement for the State of South Dakota and the Addendum language supplanting the liquidated damages provision in the License Agreement. Doc. 1; Doc. 27-7 at 2; <u>see</u> Doc. 27-5. Miller disputes Days Inns' calculation of $198,161.18 contained in the April of 2012 letter, but provided no alternative calculation of what his recurring fee balance was at the time of termination. Doc. 26-2 at 12. Miller has made no payments to Days Inns since April of 2012. Doc. 26-2 at 13. Miller took the Days Inn sign in front of his motel down in early May of 2012. Doc. 26-2 at 13. Since that time, Miller has been operating a motel under the name Range Country. Doc. 26-2 at 5.

## II. Discussion

### A. Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." On summary judgment, the evidence is "viewed in the light most favorable to the nonmoving party." <u>True v. Nebraska</u>, 612 F.3d 676, 679 (8th Cir. 2010) (quoting <u>Cordry v. Vanderbilt Mortg. & Fin., Inc.</u>, 445 F.3d 1106, 1109 (8th Cir. 2006)).

There is a genuine issue of material fact if a "reasonable jury [could] return a verdict for either party" on a particular issue. Mayer v. Countrywide Home Loans, 647 F.3d 789, 791 (8th Cir. 2011). "In considering a motion for summary judgment the court does not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue." Morris v. City of Chillicothe, 512 F.3d 1013, 1018 (8th Cir. 2008). A party opposing a properly made and supported motion for summary judgment must cite to particular materials in the record supporting the assertion that a fact is generally disputed. Fed. R. Civ. P. 56(c)(1); Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145 (8th Cir. 2012). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007). Summary judgment is not "a disfavored procedural shortcut, but rather . . . an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

**B. Days Inns' Complaint**

Days Inns moves for summary judgment on all of its claims in its Complaint. Doc. 21. The "first count" of the Complaint seeks an accounting under Sections 3.8 and 4.8 of the License Agreement. Doc. 1 at 5. However, Days Inns has provided its own damage calculation, did not mention the "first count" explicitly in its motions papers, and thus has left the Court unclear whether it is still seeking any accounting from Miller. Days Inns did serve discovery requests on Miller, which Miller evidently answered. See Doc. 26-1. There has been no motion to compel filed. Miller has maintained that he not only understood his obligations to keep records and

account, but did so. Given the state of the record, this Court denies without prejudice to refiling Days Inns' motion for summary judgment on its "first count."

The "second count" and "third count" allege breach of contract claims. Doc. 1 at 5–6. Under New Jersey law governing the License Agreement, a breach of contract claim has four essential elements: (1) "the parties entered into a contract containing certain terms"; (2) "plaintiffs did what the contract required them to do"; (3) "defendants did not do what the contract required them to do, defined as a breach of the contract"; and (4) "defendants' breach, or failure to do what the contract required, caused a loss to the plaintiffs." Globe Motor Co. v. Igdalev, 139 A.3d 57, 64 (N.J. 2016) (internal quotations and alterations removed); see also Coyle v. Englander's, 488 A.2d 1083, 1089 (N.J. Super. Ct. App. Div. 1985). Under New Jersey Law, a court is to discern the intent of the parties from the language of the contract itself. Lederman v. Prudential Life Ins. Co. of Am., Inc., 897 A.2d 373, 382 (N.J. Super. Ct. App. Div. 2006); see also Pacifico v. Pacifico, 920 A.2d 73, 77 (N.J. 2007). Generally, if a contract provision is unambiguous, then the provision reflects the parties' intent and expectations. Kieffer v. Best Buy, 14 A.3d 737, 743 (N.J. 2011).

In the "second count" of the Complaint, Days Inns seeks $414,572.40, plus interest and fees, for breach of the contract causing premature termination. Doc. 1 at 5–6. This claim stems from the Addendum to License Agreement for the State of South Dakota, which deleted the liquidated damages provision in Section 12 of the License Agreement and substituted a provision entitling Days Inns to "any and all damages which we have sustained or may sustain by reason of such default or defaults and the breach of the License Agreement on your part until the end of the Term." See Doc. 27-5 at 2. The Addendum to License Agreement for the State of South Dakota also contained a covenant in the same provision by which Miller agreed "to pay to [Days Inns]

within 10 days after demand compensation for all damages, losses, costs and expenses (including reasonable attorney's fees) incurred by us, and/or amounts which would otherwise be payable for and during the remainder of the unexpired Term of the License Agreement but for such termination." Doc. 27-5 at 2. This language substituted for a liquidated damages provision that would have capped Days Inns damages at "an amount equal to the sum of accrued Royalties and Basic Reservation Charges during the immediately preceding 24 full calendar months . . . [but] not less than the product of $2,000.00 multiplied by the number of guest rooms in the Facility." Doc. 27-1 at 15–16.

This Court refuses to grant summary judgment on the "second count" of the Complaint for a trio of reasons. First, there may be an ambiguity in the Addendum to License Agreement for the State of South Dakota, in that the first sentence seems to cap damages at what Days Inns has "sustained or may sustain by reason of . . . defaults and the breach of the License Agreement on your part until the end of the Term." Doc. 27-5 at 2. This first sentence of the Addendum could be read as allowing only actual damages from the default or breach. However, the second sentence seems to enlarge the damages recoverable from actual damages to an expectancy damages calculation that includes "amounts which would otherwise be payable for and during the remainder of the unexpired Term of the License Agreement but for such termination." Doc. 27-5 at 2. An ambiguity exists when contract language is susceptible to at least two reasonable interpretations. Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 948 A.2d 1285, 1289 (N.J. 2008). Under New Jersey law, the determination of whether a contract provision is ambiguous is a pure question of law for the court. See Teamsters Indus. Emps. Welfare Fund v. Rolls-Royce Motor Cars, Inc., 989 F.2d 132, 135 (3d Cir. 1993). When a contract is ambiguous such that the parties' intent cannot be discerned from the terms, New Jersey law permits a broad use of

extrinsic evidence to achieve the goal of discovering the parties' intent. See Conway v. 287 Corp. Ctr. Assocs., 901 A.2d 341, 347 (N.J. 2006); Globe Motor Co., 139 A.3d at 65 n.4; Mylan Inc. v. SmithKline Beecham Corp., 723 F.3d 413, 420 (3d Cir. 2013) (discussing New Jersey law). Resolution of an ambiguity, if found, is a question of fact under New Jersey law. Teamsters Indus. Emps. Welfare Fund, 989 F.2d at 135 n.2; Michaels v. Brookchester, Inc., 140 A.2d 199, 204 (N.J. 1958). The parties neither briefed nor submitted evidence on this possible ambiguity.

Second, there is at least a question about whether Days Inns' interpretation of the Addendum is unconscionable in seeking $414,572.40, plus costs and attorney's fees, for premature termination approximately seven years early, when there appears to be no significant damage to Days Inns, and no significant ongoing investment by Days Inns in the franchising arrangement with Miller (at least that would not be offset by the $41,000 paid upfront by Miller and the recurring fees plus interest owed from and incurred during his operation of the Murdo Days Inn). Under New Jersey law, a contract provision that is unconscionable may be set aside. See Muhammad v. Cty. Bank of Rehoboth Beach, 912 A.2d 88, 96–97 (N.J. 2006) (noting that the unconscionability determination usually involves discussion of both procedural and substantive unconscionability). The "indicia of procedural unconscionability" is found in adhesion contracts. Id. at 96 (citing Rudbart v. N. Jersey Dist. Water Supply Comm'n, 605 A.2d 681 (N.J. 1992)). Substantive unconscionability can be present where there are "harsh or unfair one-sided terms." Id. at 96; Sitogum Holdings, Inc. v. Ropes, 800 A.2d 915, 921–23 (N.J. Super. Ct. Ch. Div. 2002). These harsh or unfair one-sided terms must involve "the exchange of obligations so one-sided as to shock the court's conscience." Sitogum, 800 A.2d at 921; B&S Ltd., Inc. v. Elephant & Castle Int'l, Inc., 906 A.2d 511, 521 (N.J. Super. Ct. Ch. Div. 2006).

Whether a provision is substantively unconscionable requires "a careful fact-sensitive examination," Muhammad, 912 A.2d at 97, and involves analysis of "the way in which the contract was formed and, further, whether enforcement of the contract implicates matters of public interest," Stelluti v. Casapenn Enters., LLC, 1 A.3d 678, 687 (N.J. 2010). See Delta Funding Corp. v. Harris, 912 A.2d 104, 111–15 (N.J. 2006) (discussing the public interests involved in a consumer loan contract). The special Addendum to License Agreement for the State of South Dakota suggests that some aspect of South Dakota law[5] prompted deletion of the liquidated damages provision in the 1997 contract, and the substitution of a provision more onerous to Miller, at least as interpreted by Days Inns, is of questionable enforceability. See Direct Transit, Inc. v. S.D. Governor's Office of Econ. Dev., 226 B.R. 198, 202 (8th Cir. B.A.P. 1998) ("South Dakota decisions mirror the modern trend to enforce reasonable liquidated damage provisions in contracts. . . . [W]hether a provision for liquidated damages is enforceable turns on 'the reasonableness or unreasonableness of the stipulation.'" (quoting Dave Gustafson & Co. v. State, 156 N.W.2d 185, 187 (S.D. 1968)); Safari, Inc. v. Verdoorn, 446 N.W.2d 44, 46 (S.D. 1989) (liquidated damages clauses are void as an unenforceable penalty in South Dakota unless the damages are difficult to measure at the time of the contract drafting, there was an

_____

[5] The parties did not discuss, and this Court could not readily determine why the addendum substitution occurred. SDCL § 53-9-5, which was in effect during the contract drafting, states that "Every contract in which amount of damage or compensation for breach of an obligation is determined in anticipation thereof is void to that extent except the parties may agree therein upon an amount presumed to be the damage for breach in cases where it would be impracticable or extremely difficult to fix actual damage." The original liquidated damages section provided that "Liquidated Damages will not be less than the product of $2,000.00 multiplied by the number of guest rooms in the Facility." Doc. 27-1 at 13. In 2000, several years after the Days Inns Addendum was executed, the South Dakota Division of Securities required through a policy statement that a reference to SDCL § 53-9-5 be included in all contracts with liquidated damages provisions. See Super 8 Motels, Inc. v. Deer Lodge Super 8, Inc., No. CIV 06-1041, 2007 WL 4246454, at *6 (D.S.D. Nov. 29, 2007). This requirement is not present in the 2008 update to the state's franchise laws. See 2008 S.D. Sess. Laws ch. 203; SDCL § 37-5b.

attempt to settle the compensation, and the amount is a reasonable estimate of the actual damages); Prentice v. Classen, 355 N.W.2d 352, 355 (S.D. 1984) ("Whether a stipulated sum is an unenforceable penalty or an enforceable liquidated damages provision is a question of law for the court to determine based upon a consideration of the instrument as a whole, the situation of the parties, the subject matter of the contract, the circumstances surrounding its execution, and other factors."). Days Inns' interpretation of the Addendum to allow over $400,000 in future damages has the flavor of a penalty, especially in light of lower calculations contained in the liquidated damages provision replaced by the Addendum. The parties did not brief this issue either.

Third, there are fact questions about whether the calculation of $414,572.40 in future damages is speculative and the basis for the calculation. Indeed, among other things, the court record is unclear when the 20-year term began, other than some date in June of 1999.

Days Inns is entitled to summary judgment on the "third count" of its Complaint for breach of contract by Miller for non-payment of recurring fees. Section 7 of the License Agreement clearly and unambiguously entitled Days Inns to receive recurring fees from Miller. Doc. 27-1 at 10. Miller paid recurring fees during the initial years of the contract relationship. See Doc. 18-1. Miller by his own admission fell behind in paying the recurring fees. Doc. 26-2 at 9. He twice negotiated reductions in the recurring fees amounts from Days Inns, but nevertheless failed to pay recurring fees owed to Days Inns. Docs. 27-3, 27-4. He was behind on paying recurring fees when Days Inns sent the Notice of Default in January of 2012, and remained behind in paying recurring fees when Days Inns sent the Notice of Termination in April of 2012. See Docs. 27-6, 27-7. Miller has paid no recurring fees since April of 2012. Doc. 26-2 at 13. Days Inns sustained damage as a result. See Doc. 27-7 at 2; Doc. 27-8 at 11.

All elements under New Jersey law for breach of contract—a contract, plaintiff's performance, defendant's breach, and damages resulting to plaintiff—are met as a matter of law regarding "count three." See Globe Motor Co., 139 A.3d at 64.

However, the precise amount of damages recoverable on "count three"—the recurring fees owed as of April 17, 2012, plus interest—is unclear from the record. The Notice of Termination letter sent in April of 2012 estimates the fees owed by Miller to Days Inns at $198,161.18. Doc. 27-7 at 2. However, the itemized statement submitted seems to put the recurring fees owed by Miller at that point in April of 2012 at $155,909.88, plus a tax obligation of $641.27, which would total $156,551.15. Doc. 27-8 at 11. Days Inns under the License Agreement is entitled to interest "at the rate of 1.5 percent per month." Doc. 27-1 at 11. The interest calculation submitted by Days Inns causes this Court pause, as it appears to nearly equal the amount of recurring fees under the itemized statement; Days Inns sought $305,958.61 for recurring fees and interest as of the filing of the Complaint. Doc. 1; Doc. 27-8. Thus, there are some questions of fact that remain over the proper calculation of the amount of the recurring fees and interest.[6]

The "fourth count" of the Complaint sought the same relief for recurring fees under an unjust enrichment theory. Because Days Inns is entitled to recurring fees under a breach of contract theory, the unjust enrichment claim is rendered moot. Quasi-contract principles like unjust enrichment are not employed under New Jersey law if an express contract exists concerning the subject matter. See C.B. Snyder Realty Co. v. Nat'l Newark & Essex Banking

---

[6] Perhaps the parties together can calculate the amount plus interest owed under the "third count," or the matter may be submitted anew to this Court on a motion for partial summary judgment.

Co. of Newark, 101 A.2d 544, 553 (N.J. 1954); Suburban Transfer Serv., Inc. v. Beech Holdings, Inc., 716 F.2d 220, 226–27 (3d Cir. 1983).

### C. Defendant's Counterclaims

Miller's counterclaim contains four counts. Count 1 and Count 3 of the counterclaim are related, the first alleging negligent misrepresentation and the third alleging deceit and fraudulent misrepresentation based on the same contentions. Doc. 9 at 4–6, 8–9. Miller contends that he was told initially that the Days Inns Reservation System would supply more than enough customers to rent rooms to operate the hotel successfully. Doc. 9 at 4. This representation, Miller alleges, was made to him back in 1997, by a Days Inns representative. Doc. 26-2 at 6, 14. Miller thereafter entered into a License Agreement that contained a final integration clause. Doc. 27-1 at § 17.5. In Section 17.5 of the License Agreement, Miller and Days Inns agreed that "[t]his Agreement, together with the exhibits and schedules attached, is the entire agreement, superseding all prior representations, agreements and understandings (oral or written) of the parties about the Facility." Doc. 27-1 at 20. This representation, made preceding entry into the License Agreement, does not support a cause of action, given the existence of the final integrated agreement. See Conway, 901 A.2d at 346 (parole evidence rule prohibits attempts to alter an integrated written document by use of statements preceding agreement). The License Agreement did not guarantee Miller's success in the operation of his motel, and Days Inns did make available its Reservation System to Miller until opting to suspend Miller's access to it when Miller was in default of payments owed under the License Agreement. The final integration

clause and parole evidence rule justifies granting summary judgment for Days Inns on the first alleged misrepresentation made in 1997.[7]

Miller next alleges as negligent misrepresentation in Count 1 and Count 3 that Days Inns told him that he needed to become a 5 Sunburst property or a Chairman's Award property to achieve higher occupancy rates, but the higher occupancy rates did not materialize. Doc. 9 at 4–5. Both parties briefed the counterclaim contemplating that South Dakota law governed the tort claims. "The tort of negligent misrepresentation occurs when in the course of a business or any other transaction in which an individual has a pecuniary interest, he or she supplies false information for the guidance of others in their business transactions, without exercising reasonable care in obtaining or communicating the information." Pickering v. Pickering, 434 N.W.2d 758, 762 (S.D. 1989) (internal emphasis removed) (citing Restatement (Second) of Torts § 552 (1977)). A party seeking relief under South Dakota law for negligent misrepresentation must prove "knowledge, or its equivalent, that the information is desired for a serious purpose; that he to whom it is given intends to rely and act upon it; that, if false or erroneous, he will . . . be injured in person or property." Boos v. Claude, 9 N.W.2d 262, 264 (S.D. 1943) (quoting Int'l Prods. Co. v. Erie R. Co., 155 N.E. 662, 664 (N.Y. 1927)); Meyer v. Santema, 559 N.W.2d 251, 254 (S.D. 1997). "Finally, the relationship of the parties, arising out of a contract or otherwise, must be such that in morals and good conscience the one has a right to rely upon the other for information and the other giving the information owes a duty to give it with care." Meyer, 559 N.W.2d at 254 (quoting Rumpza v. Larsen, 551 N.W.2d 810, 841 (S.D. 1996)); Swanson v. Sioux Valley Empire Elec. Ass'n, 535 N.W.2d 755, 757 (S.D. 1995).

---

[7] A statute of limitations bar to such a claim likely exists as well. By 2005, some eleven years prior to this case, Miller knew that reservation volume was not making his operation financially successful and began seeking concessions from Days Inns on his payments. Days Inns did nothing to conceal what volume from the Days Inns Reservation System went to Miller's hotel.

The elements of a deceit or fraudulent misrepresentation claim under South Dakota law require even more than a negligent misrepresentation claim. The Supreme Court of South Dakota has stated that "cases of fraud and deceit[8] require a higher degree of specificity in order to avert summary judgment." Arnoldy v. Mahoney, 791 N.W.2d 645, 658 (S.D. 2010) (quoting Schwaiger v. Mitchell Radiology Assocs., P.C., 652 N.W.2d 372, 378 (S.D. 2002)); see also Bruske v. Hille, 567 N.W.2d 872, 876 (S.D. 1997) (stating specific material facts must be presented in order to prevent summary judgment on fraud and deceit claims). The essential elements of fraudulent misrepresentation under South Dakota law are:

1) A defendant made a representation as a statement of fact;
2) The representation was untrue;
3) The defendant knew the representation was untrue or he made the representation recklessly;
4) The defendant made the representation with intent to deceive the plaintiff and for the purpose of inducing the plaintiff to act upon it;
5) The plaintiff justifiably relied on the representation;
6) The plaintiff suffered damage as a result.

Johnson v. Weber, No. 27792, 2017 WL 2590203, at *8 (S.D. June 14, 2017) (citing N. Am. Truck & Trailer, Inc. v. M.C.I. Commc'n Servs., Inc., 751 N.W.2d 710, 714 (S.D. 2008)).

The South Dakota statute establishing the tort of deceit states, "One who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." SDCL § 20-10-1. Deceit is further defined, in pertinent part, as either:

(1) The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

---

[8] In Rist v. Karlen, the Supreme Court of South Dakota noted that "one who brings an action in tort or in contract should be careful to distinguish between" SDCL §§ 53-4-5, 20-10-1, and 20-10-2. 241 N.W.2d 717, n.* (S.D. 1976). SDCL § 53-4-5 defines "actual fraud applicable to contract law," while SDCL §§ 20-10-1 and 20-10-2 "define the elements of the tort of deceit, which is a species of fraud." Id. Miller's counterclaim makes no such distinction in its Count 3 for deceit and fraudulent misrepresentation.

(2)     The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;

(3)     The suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or

(4)     A promise made without any intention of performing.

SDCL § 20-10-2. "[T]he provisions of the foregoing statutes are declaratory of the common law and comprehend an intention to mislead." Rist, 241 N.W.2d at 719. The Supreme Court of South Dakota views questions of fraud and deceit as generally being questions of fact reserved for the fact finder. Tri-State Ref. & Inv. Co. v. Apaloosa Co., 431 N.W.2d 311, 314 (S.D. 1988); Rist, 241 N.W.2d at 720.

Miller's remaining alleged misrepresentation—that the motel needed to become a 5 Sunburst property and Chairman's Award property to maximize occupancy rates through the Reservation System—is not the sort of statement that can support a claim for negligent misrepresentation, fraudulent misrepresentation, or deceit. Miller has identified none of the subsections of SDCL § 20-10-2 where the statement would fit as deceit. Miller has presented no evidence that such a statement by Days Inns was not true or was known to be untrue or recklessly made, or was done with an intent to deceive. Miller's own contentions are that his efforts to improve the guest experience at his Days Inn motel actually produced very favorable responses from his customers, among the highest in the Days Inns system. Doc. 26-2 at 13. There appears to be no injury or damage induced through the statement in that Miller's efforts to improve the property paid off in favorable reviews from guests, who presumably would then be inclined to return to stay in the future at Miller's motel. Miller had a contractual obligation to perform under the License Agreement regardless, and these alleged misrepresentations did not somehow induce him to continue in the relationship. In short, there is no genuine dispute as to any material fact or triable issue on Count 1 or Count 3 of the counterclaim.

Count 2 and Count 4 of the counterclaim are related. In Count 2, Miller contends that he relied on the Reservation System of Days Inns, and the suspension of access to that system interfered with business relationship with prospective customers. Doc. 9 at 6–7. In Count 4, Miller contends that the same facts support a claim for breach of contract. Doc. 9 at 10–11. Miller's breach of contract claim is directly undermined by the language of the License Agreement itself, which in Section 11.4 expressly allows Days Inns to "suspend the Facility from the Reservation System for any default or failure to pay or perform under this agreement, discontinue Reservation System referrals to the Facility for the duration of such suspension, and may divert previously made reservations to other Chain Facilities after giving notice of non-performance, non-payment or default." Doc. 27-1 at 15. Days Inns did not breach the License Agreement by resorting to a remedy authorized by the License Agreement.

Miller's tortious interference with business relationships claim likewise fails. There are five essential elements under South Dakota law for such a claim:

1. the existence of the valid business relationship or expectancy;
2. knowledge by the interferer of the relationship or expectancy;
3. an intentional and unjustified act of interference on the part of the interferer;
4. proof that the interference caused the harm sustained; and
5. damage to the party whose relationship or expectancy was disrupted.

McGreevy v. Daktronics, Inc., 156 F.3d 837, 841 (8th Cir. 1998) (citing Landstrom v. Shaver, 561 N.W.2d 1, 16 (S.D. 1997); Tibke v. McDougall, 479 N.W.2d 898, 908 (S.D. 1992); see also Tolley v. Lev, 804 N.W.2d 440, 446 (S.D. 2011). Miller's claim fails because Days Inns, as a matter of law, did not engage in "an intentional and unjustified act of interference." See McGreevy, 156 F.3d at 841. Rather, Days Inns acted consistent with its contractual right to suspend access to the Central Reservation System because Miller was in default on payments under the License Agreement. Miller himself acknowledged that, after he acquired a different

software system at the request of Days Inns and made some payments of past due fees owed, Days Inns restored his motel to the system for a period of four or five months, until he was unable to make further payments. Doc. 26-2 at 14, 16. The License Agreement plainly allowed Days Inns to suspend Miller's access to the Reservation System while he was past due in fees payable to Days Inns. Doc. 27-1 at 15. Exercising such a valid contract right is justifiable and thus not "an intentional and unjustified act of interference." See McGreevy, 156 F.3d at 841.

## III.    Conclusion and Order

For the reasons explained above, it is hereby

ORDERED that Plaintiff's Motion for Summary Judgment, Doc. 21, is granted in part and denied in part. Summary Judgment is granted on the third count of the Complaint alleging breach of contract for non-payment of recurring fees and the damage amount will include interest, as well as reasonable attorney's fees and costs in an amount to be determined either after an evidentiary hearing to the Court or submission of damage calculations by way of affidavit or, if a fact issue still remains, a trial. Summary judgment is denied at this time on the first count and second count of the Complaint. The fourth count of the Complaint is moot based on the grant of summary judgment on the third count. It is further

ORDERED that Plaintiff's Motion for Summary Judgment, Doc. 21, is granted for the Plaintiff on all of Defendant's counterclaims.

DATED this 29ᵗʰ day of June, 2017.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE

21